MANSELL v. WESTERN UNION TELEGRAPH CO. (No. 524.)

(Court of Civil Appeals of Texas. El Paso. Feb. 10, 1916.)

1. EVIDENCE ☞352—TIME-TABLE—ADMISSIBILITY.

In an action for delay in the delivery of a telegram, resulting in inability of the addressee to attend his brother's funeral, where it was shown that a time-table admitted in evidence was issued by the railroad company to the public for guidance with respect to its trains and was in force on the date in question, its admission was not error.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1398–1403; Dec. Dig. ☞352.]

2. APPEAL AND ERROR ☞1050 — REVIEW — HARMLESS ERROR—ADMISSION OF EVIDENCE.

Any error in the admission of parol evidence of the contents of railroad time-tables is not ground for reversal, where another witness testified to the same facts without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ☞1050.]

3. NEW TRIAL ☞103 — GROUNDS — NEWLY DISCOVERED EVIDENCE.

In an action for delay in delivering a telegram, preventing the addressee from attending his brother's funeral, newly discovered evidence that a time-table admitted in evidence was not in force at the date in question is not ground for new trial, where the testimony of the plaintiff and another witness showed that there was a train which plaintiff could have taken on the afternoon of the day when he received the message, that he did not start until the next morning, and that he reached his destination in time to attend all the burial and funeral services shown to have taken place except the removal of the remains from the home to the vault at the cemetery, and the time of removal is not shown.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 215–217; Dec. Dig. ☞103.]

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by Walter Mansell against the Western Union Telegraph Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Jones, Jones & Hardie, of El Paso, for appellant. Beall, Kemp & Nagle, of El Paso, for appellee.

WALTHALL, J. This is a suit by appellant against appellee for $3,000 damages alleged to have been sustained by reason of its failure to promptly deliver a message sent from Cumberland, Md., by appellant's sister, addressed to appellant, notifying him of the serious illness of appellant's brother and requesting him to come at once and not delay. The message was received at appellee's office at Cumberland, Md., on the 2d day of June, 1913, and was forwarded by appellee to its El Paso, Tex., office on the same day at 7:41 o'clock p. m. The message was addressed to Walter Mansell. When the message reached appellee's El Paso office, it was placed in an envelope, sealed, and addressed to Walter Marshall, care El Paso & Southwestern Shops, El Paso. By reason of the change in the name of the addressee, the delivery of the message was not made until the next day at 1 o'clock, June 3d. If the message had been promptly delivered, appellant could and would have left El Paso in time to have reached Cumberland, Md., before his brother's funeral and burial. The damages sued for are alleged to have been sustained in consequence of the disappointment, grief, and mental anguish suffered by reason thereof. Appellant alleged that the act of appellee in changing the name of the addressee from Mansell to Marshall, and thereby causing the delay in the delivery of the message, was gross negligence on the part of appellee and its employés.

Appellee answered denying that it was guilty of gross negligence, alleged that it exercised ordinary care, admitted that it had made the mistake of writing the name Marshall on the envelope inclosing the message, instead of the name Mansell, traversed the facts alleged in the petition, and pleaded the laws of Maryland, and alleged that under said laws appellant is not entitled to recover damages by reason and in consequence of having suffered disappointment, grief, and mental anguish, as mental anguish unaccompanied by physical injuries are not recoverable under the laws of Maryland, which govern in this case. Appellee further alleged in its answer that the message was an interstate message, and the recovery of appellant is governed by the laws of the United States, under which no recovery can be had for mental anguish unaccompanied by physical injuries. We think we need not more fully state the issues. The case was submitted to the jury on special issues. The jury found that the telegram was not delivered with dispatch; that Mansell was prevented from attending the funeral, but that the failure to promptly deliver the message was not the proximate cause; that Mansell suffered great disappointment, grief, and mental anguish caused by his being prevented from attending the funeral; that no sum of money would reasonably compensate Mansell for the mental

anguish suffered and assessed no damages; that, if the message had been delivered with reasonable dispatch, Mansell could and would have been present at the funeral. Judgment was rendered for appellee.

Appellant presents three assignments of error; the first, to the admission in evidence of that portion of a time-table of the El Paso & Southwestern Railroad Company, purporting to give schedules of all trains between El Paso, Tex., and Chicago, up to the 1st of March, 1913, without evidence to prove that same was a correct time-table, or that trains ran in accordance therewith. The second assignment complains of the introduction in evidence of portions of a time-table relating to the schedule of trains between El Paso and Chicago and between Chicago and Cumberland, Md., by interrogating appellant as to the contents of said time-table. The third assignment questions the ruling of the court in overruling appellant's motion for a new trial, the ground in the motion being newly discovered evidence of a corrected folder and time card of the El Paso & Southwestern Railway Company, showing that the folder introduced by appellee was not in force in June, 1913, at the time represented in the folder introduced.

Witness H. D. McGregor testified that he was city ticket agent for the El Paso & Southwestern Railway Company, and had been for eight years. In reference to the morning train in June, 1913, continuing on to Chicago, it was his recollection that the train was taken off from Tucumcari about that time. The next train after the morning train would be the Golden State Limited. Was familiar with the railroads running out of El Paso to the east and the connections they make between El Paso and Cumberland, Md. The most direct route is the El Paso & Southwestern and Rock Island through to Chicago. They have the fastest trains and make the quickest time. The time-table, as to the "Golden State Limited" and "Californian," was the correct time-table for said road even as to June, 1913; that had Mansell left El Paso on June 3d on the "Californian" which left El Paso at 5:25 p. m., he would have arrived in Chicago at 4:50 p. m., on June 5, 1913. Then if the train from Chicago to Cumberland left at 5 or 6 o'clock in the afternoon and got to Cumberland about 6 or 7 o'clock the next morning, it would be immaterial whether Mansell took the Golden State Limited or the Californian, according to the time-table. The Baltimore & Ohio, according to the time-table, left Chicago at 5:45 in the afternoon. If Mansell went on the Californian, he would have, practically, one hour's time at Chicago. Witness could not say whether any other trains were changed in the schedule except the train that was laid off; but his recollection was that was the only one; no changes were made in the summer time; just whenever it was necessary. Witness' testimony about the trains from Chicago to Cumberland are based on the time-table. The same train is running now, and witness did not think it had been changed in several years. Knew the time only by the time-table. "This time-table is the schedule tendered us for our folder, for our use. It was tendered to us by the Baltimore & Ohio Railway Company."

The plaintiff testified that he did not leave El Paso on June 3d on the 5:25 p. m. train, but did leave about 7:45 o'clock the next morning on the Golden State Limited. Reached Chicago on the morning of the 6th between 10 and 11 o'clock. Left Chicago about 6 o'clock that afternoon, and reached Cumberland about 7 o'clock on the morning of the 7th. His brother's remains were put in the ground about 9 o'clock on the day he arrived. There is nothing in the record to show why he did not leave El Paso on the 5:25 o'clock p. m. train.

[1] It having been shown by the uncontradicted evidence that the time-table admitted in evidence was issued by the El Paso & Southwestern Railway Company to the public for guidance with respect to its trains and was in force on June 3, 1913, its admission was not error. Western Union Tel. Co. v. O'Fiel, 47 Tex. Civ. App. 40, 104 S. W. 406.

[2] The facts stated in appellant's second assignment do not seem to be fully sustained by the bills of exception; but, however that may be, the witness McGregor had testified to about the same facts, without objection, and under Galveston, Harrisburg & San Antonio Ry. Co. v. Norton, 55 Tex. Civ. App 478, 119 S. W. 702, and Galveston City Ry. Co. v. Chapman, 35 Tex. Civ. App. 551, 80 S. W. 856, the evidence, if objectionable, would not be reversible error.

[3] We think the ground in the motion for a new trial, the overruling of which is made the basis for the third assignment, must be overruled. Mansell testified:

"I saw the telegram that has been introduced in evidence, I should judge it was just before noon; it was when they called me to the office on the morning of the 3d day of June. * * * After I had seen this telegram out at the shops, I knocked off work, told them I was through and wanted to go east as quick as possible. I made arrangements with the shops for transportation. * * * I got a slip for my money in the office. Then I left the office and went and changed my clothes and then proceeded to come to the city to send a telegram back. * * * I saw the Golden State Limited leaving before I got to the telegraph office. I saw it when I was on the street car. * * * I did not take the afternoon train, the Golden State Limited, the day I received the telegram. I saw the train passing as I was coming down Myrtle avenue. I was right there close to the Elk's Club. That is probably a mile from Union Depot. Yes, sir; there was a train known as 'The Californian' leaving about 5 o'clock in the afternoon; at 5:25 p. m. Yes, sir; that train is No. 2. The Californian, leaving at 5:25, would reach Tucumcari at 4 the next morning, and would reach Chicago 4:50 p. m. of the second day. It takes more than two days, doesn't it? It looks that way, that you would reach Chicago 4:50 p. m. on the second day. The Golden State Limited got out before I got to town. I

didn't leave on the 5:45 train that day. I left the next morning on the early morning train and stopped over at Tucumcari and took the Golden State Limited."

Mansell also testified as to what took place at Cumberland in the matter of his brother's burial after he reached Cumberland at 7 o'clock on the morning of the 7th of June.

"My brother's remains were put in the ground the same day I arrived there; about 9 o'clock. When he was taken from the house to the cemetery, I was not there. I was at the cemetery before he was put in the ground. I possibly did state on direct examination that I was not at his funeral. When he was put in the ground, I was there at that time. The remains before I got there had been removed from the house to the vault. The vaults are overground things with doors that you can go into."

The record does not disclose whether any funeral service was had other than placing the body in the ground. The petition alleges that the damages suffered were occasioned by the sorrow, grief, and mental anguish because of the fact that "he was deprived of being at his brother's funeral and the burial of his brother's remains."

Whatever the newly discovered time-table might show with reference to movements of the trains, the evidence of the witness McGregor and the plaintiff shows that the Californian, as a matter of fact, left El Paso on the 3d of June at 5:25 p. m.; also, the evidence discloses that Mansell reached Cumberland in time to attend all of the burial and funeral service shown to have taken place, except the removal of the remains from the home to the vault at the cemetery, and the evidence does not disclose when that occurred.

The cause is affirmed.